(3 App. Div. 198.)

### BIMSON et al. v. BULTMAN.

(Supreme Court, Appellate Division, Second Department.     April 7, 1896.)

1. RESTRICTION IN THE USE OF LANDS—ESTOPPEL IN PAIS.

An improvement company laid out a large tract in building lots, and circulated maps, which contained the statement that only buildings of brick or stone would be allowed to be built thereon. The same statement appeared in signs placed on the property, and was made orally by the officers of the company to certain grantees, who covenanted in the deeds to them not to erect on the lots any frame buildings. *Held*, that the statement was a representation of an existing fact relating to the property, and that the company and grantees of other lots, with notice of the restrictions in the deeds to the earlier grantees, were estopped from denying its truth. Pratt, J., dissenting.

v.38N.Y.S.no.3—14

2. SAME—ORAL PROMISE—INJUNCTION.

At the suit of a grantee in such case, a court of equity may restrain the grantor from doing on the remaining land that which he orally promised not to do, and that which the grantee covenanted not to do on the land conveyed to him.

3. SAME—PROXIMITY OF BUILDINGS.

The restraining power of the court will not be exercised unless the lot whereon a frame dwelling is being erected lies in the same street or the same block with plaintiff's lots, or, if in another street or another block, in close proximity to plaintiff's property.

Appeal from city court of Brooklyn, special term.

Action by Cornelius E. Bimson and others against Albert H. Bultman to restrain him, as grantee of a common grantor, from erecting frame buildings on certain lots.     From a judgment in favor of plaintiffs, defendant appeals.     Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Charles H. Otis, for appellant.

Charles M. Earle, for respondents.

BROWN, P. J.     The German Improvement Company, in the year 1892, was the owner of a tract of land in the Twenty-Sixth ward of the city of Brooklyn, of which it caused maps to be made, upon which said tract was laid out into streets and lots.     These maps were distributed and circulated among real-estate brokers and prospective buyers, and, upon the reverse side thereof, there appeared a lengthy advertisement, which contained, inter alia, the following:

"The attention of builders, buyers of houses or lots is called to the largest and most perfect real-estate developing enterprise ever attempted in either Brooklyn or New York.    Over 1,600 city lots, 20x100 feet, located in the Twenty-Sixth ward, Brooklyn, on the line of Kings county L. road. * * * Five miles of streets improved under direction of city engineer.    The entire tract restricted and controlled by one management.    All buildings must be brick or stone; no frame."

In addition to the map and the statements thereon, signs were erected in three different places on the property, containing the statement that "only brick or stone buildings were allowed to be built; no frame buildings."

In 1893 the said company conveyed six lots to one Eierman, and two lots to the plaintiff Bischoff.    The deeds to these parties contained covenants upon the part of the grantees that they would not erect upon the lots conveyed any frame building, or buildings of material other than brick or stone.    Eierman and Bischoff built upon their lots dwellings in accordance with the terms of the deeds, and subsequently Eierman conveyed five of his lots to the respondents other than Bischoff.    At the time of the sales to Eierman and Bischoff, the officers of said company orally repeated the statements contained in said map and signs, and represented that no frame buildings would be permitted to be erected on said tract of land. On August 28, 1895, the improvement company conveyed to the appellant three of said lots of land by a deed which contained no restrictions against the erection of frame buildings; and, immediately after the conveyance to him, the appellant commenced the erection

thereon of two frame dwellings. So far there is no dispute as to the facts of the case.

The court found that the appellant purchased with knowledge of the restrictions in the deeds to Eierman and Bischoff, and of the statements and representations that had been made by the improvement company and its officers, and that Eierman and Bischoff purchased in reliance upon such representations; and these conclusions, excepting that in reference to Eierman's having been induced to purchase by said representations, we think, have support in the testimony.

The principle which supports the judgment in this action is that, where an owner of land contracts with the purchaser of successive parcels in respect to the manner of the occupation and improvement of such parcels, he thereby affects the remainder of the land with an equity which requires it also to be occupied and improved in conformity to the general plan; and this equity is binding upon a subsequent purchaser of the remaining parcel, who has notice of the prior agreement, though his legal title be unrestricted. Tallmadge v. Bank, 26 N. Y. 105; Trustees v. Lynch, 70 N. Y. 440–447; Parker v. Nightingale, 6 Allen, 341; 3 Pom. Eq. Jur. § 1295, and cases cited in note.

The appellant contends that as the promise of the improvement company that the whole tract should be made subject to the same restrictions as were contained in the deeds to Eierman and Bischoff was by parol, and related to an incorporeal right in real estate, it is void by the statute of frauds. It would be difficult to overcome this objection if the existence of a contract in reference to the use of the balance of the land by the improvement company was essential to the plaintiff's right of action. Cases of mutual covenants on the part of grantor and grantee, as well as cases between grantees of a common grantor, both of whom have covenanted to restrict the use of the several parcels conveyed to them, are easily taken out of the operation of the statute. Parker v. Nightingale, 6 Allen, 341. But in this case no interest in the grantor's land has been created by any instrument in writing. The agreement by which the use and improvement of such land is claimed to be restricted rests in parol only. In Tallmadge v. Bank and the other cases cited by the respondents, the oral agreement had been executed; and, of course, neither party could thereafter recall what had been done. Newman v. Nellis, 97 N. Y. 285. In the disposition of this case, we may assume, I think, that the promise of the improvement company could not be sustained as a valid contract which would support an action either for its enforcement or its breach; but it does not necessarily follow from that conclusion that a court of equity, at the suit of a grantee, may not restrain a grantor from doing upon the remaining land that which he orally promised not to do, and that which the grantee covenanted not to do, upon the land conveyed to him. The rule applied in the cases upon this subject rests upon the doctrine of estoppel. Where a party, by his declaration or conduct, has induced another person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission, if the

consequence would be to work an injury to such other person, or to some one claiming under him. Wendell v. Van Rensselaer, 1 Johns. Ch. 344–354; Storrs v. Barker, 6 Johns. Ch. 166; Dezell v. Odell, 3 Hill, 215; Brown v. Sprague, 5 Denio, 545; Plumb v. Insurance Co., 18 N. Y. 393; Brown v. Bowen, 30 N. Y. 519; 3 Washb. Real Prop. c. 2, § 6, subd. 8. An estoppel in pais does not create a technical title in land. Its effect is to conclude a party from denying the effect of his statements or admissions designed to and which have influenced the conduct of another, and, when so applied, it is as effectual as a deed would be from the party estopped. Numerous cases on the subject are cited by Mr. Washburn in his work on Real Property, supra, and others are collected in the notes.

The statements upon the map circulated by the improvement company, and upon the signs upon the property, and which were repeated by the officers of the company to Eierman and Bischoff, were that the entire tract of land was restricted, and that all buildings erected thereon must be of brick or stone. This was a representation of an existing fact relating to the property, of the same character as a representation as to a dividing line or a boundary of land conveyed; and neither the improvement company nor the appellant can be permitted to deny the truth of those statements. The power of a court of equity to grant relief by an injunction in cases of this character is too well settled to admit of dispute; and, so far as my examination has informed me, it is within proper limits applied with general approval in the courts of this country and England. But cases of this character are analogous to actions to enforce specific performance of a contract to convey real estate. Such applications are addressed to the sound judgment and discretion of the court, and it has been the settled doctrine of courts of equity to refuse such relief when it will result in great hardship and injustice to one party, without considerable gain or utility to the other. Trustees v. Thacher, 87 N. Y. 311; Conger v. Railroad Co., 120 N. Y. 29, 23 N. E. 983.

In the present case the improvement company laid out into streets and lots a tract fully one-half mile in length and a quarter of a mile in width. There are shown upon the map 7 streets running north and south, and 8 streets running east and west. There are about 36 blocks, containing in all 1,600 city lots. It was, undoubtedly, the intention of the improvement company that the whole section should be built up with brick and stone dwellings. It made the representations in that regard in entire good faith, without any intention to deceive or mislead. After four years of effort, 86 lots had been built upon, all of which are owned by the company except 22. The appellant's lots are located on the west side of Bradford street, about 500 feet from the north line of the tract, and about 550 feet from the east line thereof. The lot owned by Bischoff is on the third street west of Bradford street, and upon a block further to the south. In a direct line it is distant from appellant's lot about 800 feet. The lots owned by the plaintiffs Bimson and Lane are upon the west side of Wyona street, next west of Bradford; and those owned by the other plaintiffs are on Vermont street, one block further to

the west. The question, therefore, is presented whether the court will enforce this restriction against the improvement company, or a grantee thereof with notice, upon every lot within the tract described, or, if it will not, within what distance from the lot where the restriction is violated will it enforce it. It is impossible, of course, to fix any arbitrary line to control this question. We are of the opinion, however, that the restraining power of the court should not be exercised unless the property where the frame dwelling is being erected lies in the same street or the same block with the plaintiffs' lots, or if in another street or another block in close proximity to the plaintiffs' property. In all the reported cases that have come under my observation the property of the respective parties has been either adjoining or in the same street. The covenant in the deeds permits the erection of two-story brick buildings for residence or business purposes, without any restriction as to price; and it is quite apparent that buildings could be erected that would be entirely within the restriction which would be more detrimental to the surrounding property than a frame cottage. It is a matter of common observation in cities that the character of buildings in one street has very little effect upon the value of property in parallel streets. That has been so even wih the elevated railroads, and those structures have caused little or no depreciation in the value of the property in the parallel streets. We are of the opinion that Bischoff's property and the lots upon Vermont street are too remote from the appellant's lots to be affected by the erection thereon of a frame building. The lots upon Wyona street, next west of Bradford, are owned by the plaintiffs Bimson and Lane, and they derive their title through Eierman; and the testimony does not satisfy us that either he or either of his said grantees purchased in reliance upon the representation that none but brick or stone buildings should be erected within the tract owned by the improvement company. Lane was not called as a witness. Bimson did not testify that he bought in reliance upon any such representation. He testified that he had so informed Bultman, but he did not say that such was the fact. Eierman did say on his direct examination that he relied upon the statements that were made to him, but upon his cross-examination he testified as follows:

"I didn't take any stock in it. I didn't care what came, as long as I was above board, and carried out my agreement. I never thought no more of it. * * * I bought the lots very cheap; very low, indeed. In reference to this, Mr. Brommer said, 'We will sell you those lots very cheap, indeed, if you will put up brick buildings upon them, setting back fifteen feet from the street.'"

This testimony, we think, is not sufficient to create an estoppel.

We are of the opinion, therefore, that the judgment as to all the plaintiffs except Bimson and Lane should be reversed, and the complaint dismissed, without costs. As to Bimson and Lane, it should be reversed, and a new trial granted, with costs to abide the event.

CULLEN, BARTLETT, and HATCH, JJ., concur.

PRATT, J. (dissenting). The principle is well established that a purchaser of real estate takes subject to all equities of which he has

notice. In the present case it sufficiently appears that defendant knew when he purchased that plaintiffs bought upon the faith of the restriction announced by the common grantor. The defendant states that he consulted counsel upon the matter, and was advised that, if he secured a deed which contained no restriction, he would be able to use his land as he desired. We think he was badly advised, and that he must abide by the case of his grantor. The plaintiffs were prior purchasers in point of time, and can enforce the restriction against subsequent purchasers with notice. It appears that plaintiffs have not paid for their lots, and the circumstances of their alleged purchase create a good deal of doubt whether it was more than colorable. What would probably be a good test is to inquire if their grantor could have built the house in question. If he could not, neither could his grantee with notice. In a case where the lot was so far away as that the damage to the plaintiffs was not appreciable, equity would not take cognizance of a violation of the restrictions; but, where the fact is found that the plaintiffs will be materially damaged, equity ought to intervene and grant relief. Judgment affirmed, with costs.