(159 App. Div. 207.)

### DAVIDSON v. DUNHAM et al.

(Supreme Court, Appellate Division, Fourth Department. October 15, 1913.)

1. COVENANTS (§ 79*)—RESTRICTIVE COVENANT—RIGHT TO ENFORCE—PARTIES.

   Where a uniform improvement plan has been adopted for a tract of land which is subdivided into lots and the lots are conveyed under deeds containing a restrictive covenant in conformity with such uniform plan, the covenant is enforceable by any grantee as against any other upon the theory that there is mutuality of covenant and consideration.

   [Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 78–82; Dec. Dig. § 79.*]

2. COVENANTS (§ 79*)—RESTRICTIVE COVENANTS—COURSE OF DEALING—PERSONAL AGREEMENT.

   Where some of the lots formed from a tract of land were conveyed by deeds restricting their use to residence purposes and others of the lots were mortgaged and conveyed by instruments not containing such restrictions, and there was no uniformity of location as to the latter lots, the covenant when expressed was a mere personal covenant between the grantor and the particular grantee and not enforceable against such grantee by other grantees.

   [Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 78–82; Dec. Dig. § 79.*]

3. COVENANTS (§ 51*)—RESTRICTIONS BY EQUITABLE AGREEMENT—ESSENTIALS.

   Where a grantor conveyed a lot to R. by a deed containing no restrictive covenant, and subsequently the lot was conveyed back and then reconveyed to R. by a deed containing a restrictive covenant, and where in the meantime, while the lot was owned by R. free from such cove-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nant, another lot forming a part of the same tract was conveyed to D. by a deed containing no such covenant, no equitable agreement as to the covenant existed as between R. and O.; it being essential to establish such an equitable agreement that, though there be a common grantor, there exist a mutuality of obligation and benefit.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 50; Dec. Dig. § 51.*]

4. COVENANTS (§ 51*)—MATTER PRECLUDED.

Where a grantee at the time of accepting a deed containing a restrictive covenant held other lots comprising a part of the same tract under deeds containing no such covenant, he could not claim that a mutual equitable agreement existed between him and other lot owners deriving title from the same grantor which imposed upon each the obligation of such covenant.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 50; Dec. Dig. § 51.*]

Foote and Merrell, JJ., dissenting.

Appeal from Trial Term, Erie County.

Action by Walter V. Davidson against Frederic G. Dunham and another. From judgment for plaintiff, defendants appeal. Reversed, and new trial granted.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Frederic G. Dunham, for appellants.
George Clinton, of Buffalo, for respondent.

LAMBERT, J. The action is in equity, and, through it, it is sought to restrain defendants in the use of the premises of which they hold title. Defendants' premises are subdivisions of a large tract in the city of Buffalo, purchased in 1889 by the copartnership of Thorne & Angell, and known as Meadow View Park. Following their purchase, Thorne & Angell laid out various streets through this tract and subdivided the remaining land into some 253 lots. Subsequent conveyances were all made with reference to the survey and map then made and filed. The defendant Frederic G. Dunham is the owner of two entire lots, and a portion of a third, of such subdivision; and the defendant Sydney Dunham is the lessee of such lands. The plaintiff is the owner of three lots of such subdivision, known as lots Nos. 11, 12, and 42 in block A.

[1] Defendants' title was first conveyed by Thorne & Angell in 1890, to one Abby L. Dunham, and in such conveyance is to be found the following covenant.

"This conveyance is made and taken with the express understanding and condition that the above-described premises shall be used for dwelling or residence purposes only, and for the usual and natural uses connected therewith, and no other, and that any and all dwellings erected thereon shall cost not less than $3,000.00 and shall be erected, not nearer than 25 feet from the front street line of the lot."

It is conceded that defendants have devoted their premises to other uses than residence purposes. In fact, they have, for some time past,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

conducted thereon a hospital and sanitarium, and it is of such use that plaintiff complains.

The above covenant is found in a majority of the deeds from Thorne & Angell to the various lot holders, and from such fact, and the attendant circumstances, plaintiff asserts, as a basis for equitable relief, the existence of a uniform plan for the improvement of this tract, sufficient to support an equitable agreement, to be implied from the circumstances, making such covenant operative against each subdivision for the general benefit of all.

It is solely upon such theory that the plaintiff has had judgment, and it is upon such that the judgment is to be sustained, if at all. The application of the rule of law invoked, to those instances where a uniform plan of improvement has been adopted, is beyond question. Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687, 37 L. R. A. (N. S.) 1, 127 Am. St. Rep. 925. As was said in this case, in speaking of such a general improvement plan:

"In such cases the covenant is enforceable by any grantee as against any other upon the theory that there is a mutuality of covenant and consideration which binds each and gives to each the appropriate remedy."

[2] Appellants urge, however, that this case does not present a state of facts rendering such rule applicable. The evidence in such connection is almost wholly a record of the conveyances and presents no disputed question of fact. It appears that Thorne & Angell, after making the subdivision, parted with their entire title by various deeds and mortgages. Some 208 of the 253 lots were conveyed by deeds, containing the above restrictive covenant. Some 21 were conveyed without any restriction. Some 23 were mortgaged without restriction and through foreclosure; the title to such has been conveyed free from the restriction. Ten of the above 208 lots have likewise become freed from the restriction through foreclosure. Nor do the excepted lots have any uniformity of location, such as would evidence an intention to limit the application of the claimed improvement scheme to any particular portion of the tract. The conveyances, both by deed and mortgage, omit the covenant too frequently to ascribe such omission to inadvertence, and the haphazard use of the covenant in the conveyances by Thorne & Angell would appear to rather effectively combat the general improvement plan, pleaded by plaintiff as the basis of his cause of action.

As further evidencing that the covenant was intended as nothing more than a personal agreement, it is to be noted that upon two occasions, by their solemn and formal deed, Thorne & Angell extinguished such covenant in titles theretofore conveyed.

[3] There is further and effective bar to relief for the plaintiff furnished by the record. The right of Thorne & Angell to enforce the covenant as a personal agreement is not presented. The inquiry is, rather whether the course of dealing with these titles has been such as to impose upon each a restriction for the benefit of the other. There is no covenant directly between the parties, and in order to establish an equitable agreement, through the common grantor and by way of the mesne conveyances, there must exist a mutuality of obligation and

benefit. Such was the holding of the Court of Appeals in Korn v. Campbell, supra.

Plaintiff's standing to maintain this action rests in his ownership of lots 11, 12, and 42 in block A. Lot 42 was conveyed by Thorne & Angell to one Ritter, March 31, 1890, by a deed containing no restrictive covenant. April 26, 1890, said lot was conveyed back to Thorne & Angell by said Ritter, and on the same day was reconveyed to said Ritter by Thorne & Angell by deed containing such restrictive covenant.

On April 25, 1890, defendants' title was first cut off, at which time lot 42 was owned by Ritter under a conveyance free and untrammeled. It is difficult to see how it can be said that there exists any privity of title or mutuality of contract as regards lot 42. Surely defendants could not assert such equitable agreement as against that title, and hence plaintiff can have no standing so far as lot 42 is concerned. The rights of the parties remain unaffected by the subsequent conveyances between Ritter and Thorne & Angell. Thorne & Angell having parted with defendants' title, no subsequent acts of theirs could increase or diminish the defendants' rights in connection therewith. Such rights became fixed and established at the time of the giving of the deed to defendants' predecessors.

[4] As to lots 11 and 12, it appears that plaintiff derived title thereto from Thorne & Angell through one Crocker. Prior to a conveyance thereof to Crocker, Thorne & Angell had conveyed to Crocker, by unrestricted deeds, four other lots in this tract, not otherwise involved in this action. When Crocker took his conveyance of lots 11 and 12, it appears, therefore, that he was then holding title to four lots which were not subject to such restriction. It must be conceded that plaintiff has no better standing with reference to this title than Crocker would have had, if he now owned lots 11 and 12. Jayne v. Cortland Waterworks Co., 107 App. Div. 517, 95 N. Y. Supp. 227.

The inquiry then is: Could Crocker have maintained this action under those circumstances? It seems clear that he could not. The foundation of this action is a mutual equitable agreement between the several lot owners, the consideration for which is the benefit to all arising from the restriction upon each. It could scarcely be contended that Crocker could assert the existence of such an agreement at a time when, in derogation of it, he was holding four of these very lots untrammeled by the agreement which is asserted as the basis of this right of action. His right to enforce the restriction against defendants by necessary implication would carry with it defendants' right to assert the same against his title. Such right they did not and could not have, inasmuch as his deed to such four lots contained no such restriction. He, having taken title to a portion of this tract in a manner which precludes the enforcement of such an agreement against him, could not be heard in a court of equity to ask for the enforcement of that agreement which he himself was violating in so holding such title.

It is further urged by appellants that a reversal is required, upon the theory that plaintiff is estopped from asserting this covenant, by reason of a continued passive acquiescence in the uses to which this property

has been put and by reason of his failure to sooner assert his claim. The record before us apparently does not present all the facts in this connection susceptible of proof. Hence we do not determine such question of estoppel, but place our decision wholly upon the foregoing grounds, leaving such question of estoppel to be determined by the trial court upon the new trial, which must be had herein.

The judgment appealed from should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur, except FOOTE and MERRELL, JJ., who dissent in an opinion by FOOTE, J.

FOOTE, J.   I dissent and vote for affirmance.

The finding that Thorne & Angell did adopt the uniform improvement plan for the tract, whereby it was to be used for private residences only, is, I think, supported by sufficient evidence. The plan was embodied in the deeds to them of the tract, and they covenanted with their grantors to follow it in the sale of lots, and they did, in fact, follow it as to most of the lots. In the few cases, relatively, where they conveyed lots without incorporating the restrictions in the deeds, the purchasers had notice of the uniform building plan in the deeds to Thorne & Angell in their chain of title. This put them upon inquiry as to whether Thorne & Angell had undertaken to carry out the plan. They were not, therefore, purchasers without notice of the plan, but held title subject to such equities in favor of other lot owners as existed against Thorne & Angell, their grantors. Silberman v. Uhrlaub, 116 App. Div. 869, 102 N. Y. Supp. 299; Boyden v. Roberts, 131 Wis. 659, 111 N. W. 701; Allen v. City of Detroit, 167 Mich. 464, 133 N. W. 317, 36 L. R. A. (N. S.) 890; Collins v. Castle, Law Rep., 36 Chan. Div. 243; Re-Birmingham & District Land Co. & Allday Law Rep. 1st Chan. Div. (1893) 342; Tallmadge v. East River Bank, 26 N. Y. 105.

Whether the owners of the so-called unrestricted lots may in equity be restrained from violating the restrictions and thus defeat the plan depends, I think, in part upon whether lots of other purchasers were sold upon representations of Thorne & Angell that the tract was or was to be restricted to private dwellings; to what extent the plan has been carried out by the erection of dwellings; and whether so many of the so-called unrestricted lots have been applied to other uses as to defeat the general plan.

But assuming that upon this record it may not be held that the owners of the so-called unrestricted lots can be restrained from violating the restrictions, still I think the number of these lots is so small relatively to the number of restricted lots, and their location is such with reference to the lots of the parties here, being, for the most part, in other blocks separated by intervening streets, that the general improvement plan as to this block, at least, has not been defeated.

The following authorities, I think, support this conclusion: Silberman v. Uhrlaub, supra; Barnett v. Vaughan Institute, 134 App. Div. 921, 119 N. Y. Supp. 45; Coates v. Cullingford, 147 App. Div. 39, 131 N. Y. Supp. 700; Hano v. Bigelow, 155 Mass. 341, 29 N. E. 628; Bacon v. Sandberg, 179 Mass. 396, 60 N. E. 936; Donahoe v. Turner, 204

Mass. 274, 90 N. E. 549; Frink v. Hughes, 133 Mich. 63, 94 N. W. 601; Clark v. Martin, 49 Pa. 289.

As to plaintiff's standing to maintain this action by virtue of his ownership of lot 42, it is to be observed that there is no finding as to plaintiff's ownership of that lot, and that the judgment rests wholly upon his right as the owner of lots 11 and 12 in block A. As to these lots 11 and 12, it is true that they were first conveyed by Thorne & Angell to one Crocker, and that about one month earlier Thorne & Angell had conveyed to Crocker four other lots in another block in the tract without restrictions. Crocker subsequently conveyed these four lots by deeds which contained the restrictions. Assuming, however, that this did not bring the lots into the general plan, still they were located so far from the block in which are the lots of the parties here that this purchase by Crocker without restrictions should not be held to estop Crocker, or his successors in title, from enforcing the restrictions as to the lots in block A as the owner of lots 11 and 12 in that block.

It will conform more nearly to the intent of the parties to hold that the four lots first sold to Crocker formed no part of the tract as to which the general plan applies.

The question as to whether, after a general improvement plan for a tract of land has been adopted and lots conveyed to purchasers restricting their use to conform to the plan, the conveyance of a few lots without restrictions will thereby defeat the plan and render the restrictions unenforceable as to any lot was not involved or decided in Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687, 37 L. R. A. (N. S.) 1, 127 Am. St. Rep. 925, and that case should not, I think, control the decision here upon that question.