SAMUEL VERBER, Plaintiff, *v.* THE SEAMEN'S BANK FOR SAVINGS IN THE CITY OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Manhattan, Seventh District, April 20, 1934.

*Jacob J. Pantell,* for the plaintiff.

*Barry, Wainwright, Thacher & Symmers,* for the defendant.

LEWIS, DAVID C., J. This matter comes before the court on an agreed statement of facts.

The plaintiff contends that certain restrictions in the deeds to the defendant's chain of title rendered the conveyance of a marketable title by the defendant impossible. It will be noted that the terms of these restrictions did not expressly impose any restraint on the grantor. But at all times the grantor's use and title remained free of the restrictions.

The following facts present the essential features of the case:

On October 1, 1917, E. A. Acker acquired title to a parcel of six contiguous lots, which are indicated 56, 57, 58, 59, 60, 61.

Acker held no other property in the vicinity and his title to this parcel was free of all restrictions.

In 1923 Acker erected a two-family structure on the two center lots (lots 58 and 59). This left two unimproved lots to the south (lots 60 and 61). In May, 1924, Acker conveyed the two lots to the north (lots 56 and 57) to Panarelli. The deed contained the following restriction: " Restricting the aforesaid premises until May 1, 1934, against erection and maintenance of any building designed to be occupied by more than three families." ·

In July, 1925, Acker conveyed the remaining two unimproved lots (the two to the south) — lots 60 and 61 — to Markap Realty Corporation. This deed likewise contained the restriction: " The party of the second part [corporation], its successors or assigns, shall not erect any building upon any part of said premises more than two stories in height and for dwelling purposes only."

This covenant was subsequently slightly modified by agreement between the grantor and grantee.

In 1927 (after the death of Acker) the two center lots (58 and 59), with the two-family residence upon them, were conveyed by his executors to Thomas Aquino. This deed contained the following authorization to remove the restrictions: "Also the right to remove any restrictions imposed by the said Edward A. Acker during his lifetime on the lots numbered on said map as numbers 56, 57, 60 and 61, formerly owned by the said Edward A. Acker and sold by him subject to the said restrictions as to the buildings thereon to be erected."

The said Aquino subsequently acquired title to lots 56 and 57 and thereafter mortgaged the combined parcel, constituted of lots 56, 57, 58 and 59, to the defendant herein. This mortgage was foreclosed by the defendant, and upon the sale and foreclosure was

bid in by it, the defendant receiving a deed from the referee containing the following exception provisions: "Subject to whatever state of facts an accurate survey of the premises might show, and further subject to restrictive covenants contained in instruments recorded in the office of the Register of the County of the Bronx, in Liber 447 of Conveyances, at page 310, and in Liber 772 of Mortgages at page 483." (The references referred to cover the restrictions involved.)

Thereafter and in 1931 the plaintiff entered into a contract of purchase covering the said four lots (56, 57, 58 and 59) from the defendant. By this contract the defendant agreed to convey the said lots subject to the following expressed exceptions:

" 1. Building restrictions and regulations in resolution or ordinance adopted by the Board of Estimate and Apportionment of the City of New York, July 25th, 1913, and amendments and additions thereto now in force.

" 2. Encroachments of stoops, areas, or cellar space, if any, upon any street or highway, and such other facts as an accurate survey may show."

The closing was extended at the request of the plaintiff to allow it to secure funds with which to complete the purchase, the defendant insisting, however, that the contract close on February 19, 1932. On that day no one appeared for the plaintiff, and the defendant on February 25, 1932, advised Panarelli that it considered the contract breached, and declared the deposit forfeited.

In October, 1933, the plaintiff for the first time claimed that the defendant had been unable to convey a good and marketable title, and for that reason it could not capitalize the alleged default of the plaintiff and forfeit his deposit. Unless the plaintiff's contention is correct, he cannot prevail.

Nowhere in the stipulated facts or in the express terms of the restrictions can we put our finger on specific words, acts or circumstances, or any combination, whereby the original owner, Acker, the grantor, lost or alienated to either of his immediate grantees, Panarelli or Markap Realty Corporation, his right to cancel the restrictions, or whereby either grantee acquired any authority over the other grantee's property.

The conveyances by Acker were executed independently of each other and at two different times (more than a year apart) to two different purchasers, who apparently remained strangers to each other.

We cannot find any proof in this record of a common plan for the development of a tract of land, and that the grantees or purchasers acquired title with reference to such a plan.

A survey of the facts shows no relationship either between the original individual grantees, or their respective grants; that is, between the parties or the transactions.

The language of the restriction did not purport to create an estate; only to impose, for a prescribed period, certain limitations upon the use of the property by. the grantee in favor of the grantor. It left Acker, and his successors in title to lots 58 and 59, free to cancel the restrictions over either or both of the adjoining parcels, without the consent of either adjoining owner.

So much for the facts. What is the law?

The Court of Appeals instructs us that the basis for a reciprocal restriction demands evidence of intent of grantor to impose the restrictions.and of its disclosure to the grantee.

" General pronouncements in the books as to the purpose and effect of equitable restrictions are likely to mislead unless read with discrimination as to the facts. ' Before a stranger to a conveyance may assert rights based upon a covenant or restriction, " there must be found somewhere the clear intent to establish the restriction for the benefit of the party suing or his grantor, of which right the defendant must have either actual or constructive notice." ' (*Vogeler* v. *Alwyn Imp. Corp.*, 247 N. Y. 131, 136, citing *Equitable L. Assur. Soc.* v. *Brennan*, 148 id. 661.) The facts must be scrutinized to ascertain whether there is a servitude at all, and, if so, the zone and the incidence of benefit and burden. One who imposes a restriction upon buyers of his land may have in mind *benefit to himself*, or *benefit to others*. (*Korn* v. *Campbell*, 192 N. Y. 490.) If all that he has in mind is benefit personal to himself, the *buyers, though subject to the restrictions, do not succeed to the right to enforce it inter se*. (*Equitable L. Assur. Soc.* v. *Brennan, supra; Korn* v. *Campbell, supra;* Stone, The Equitable Rights and Liabilities of Strangers to a Contract, 19 Col. L. Rev. 177, 181.) * * *

" If restrictions evidenced by covenant and binding in their terms upon the land of the grantee, are to be *read as meaning that the grantor imposes a like restriction upon any land retained by him, the inference may not be drawn without something to show that exact uniformity in respect of all restrictions was of the essence of the project.* (*Spicer* v. *Martin*, 14 A. C. 12; *In re Birmingham, etc., Co.*, [1893] 1 Ch. 342; *Reid* v. *Brickerstaff*, L. R. [1909] 2 Ch. 305, at 319, 320; *Collins* v. *Castle*, 36 Ch. Div. 243; *Shoyer* v. *Mermelstein*, 93 N. J. Eq. 57; *De Gray* v. *Monmouth Beach Club House Co.*, 50 N. J. Eq. 329, 338; *Sanborn* v. *McLean*, 233 Mich. 227; *Summers* v. *Beeler*, 90 Md. 474; *Bimson* v. *Bultman*, 3 App. Div. 198, 201; *Turner* v. *Howard*, 10 App. Div. 555.) Buyers must have been invited ' to come in and purchase on the footing that the

whole of the property offered for sale was to be bound by one general law ' as to the size of the lots and the character of the buildings. (*Spicer* v. *Martin, supra; Reid* v. *Brickerstaff, supra.*) " (*Bristol* v. *Woodward,* 251 N. Y. 275, at pp. 284, 285.)

For the plaintiff to prevail, he must bring the case within the classification defined by the law:

" (1) Those which are entered into with a design to carry out a general scheme for the improvement or development of real property.

" (2) Those cases in which the grantor exacts the covenant from his grantee, presumptively or actually, for the benefit and protection of contiguous or neighboring lands which the former retains.

" (3) Where there are mutual covenants between owners of adjoining lands in which the restrictions placed upon each produce a corresponding benefit to the other." (*Korn* v. *Campbell,* 192 N. Y. 490, at pp. 495, 496.)

The facts found cannot square with these legal requirements.

This disposition of the case renders unnecessary a determination of the other points raised.

Judgment for the defendant. Ten days' stay.