Bernard S. Meter, J.
This action concerns properties within a tract of 133 acres originally acquired by defendant Harbour Green Estates, Inc. The president of that corporation and of defendants Ivy-Larel Corp. and Creston-Springs Corp., which were building corporations, was defendant Allan V. Rose. For convenience, all four are referred to hereafter as Rose Interests, it being conceded that their relationship was such that the acts of one bind the others. The 133-acre tract was subdivided into five sections. Section 3 consisted entirely of interior parcels. All of the other sections included beachfront parcels. Section 1 is of importance in the action only in that, to conform to Federal Housing Authority eligibility requirements, a declaration covering that section was filed which, among other things, prohibited use of any parcel in the section for other than one-family dwelling purposes. No other declaration of restrictions was filed with respect to any other section, and the section 1 declaration specifically excluded from its effect any land outside section 1. Section 2 was, in the main, developed by the Rose Interests, although certain lots were sold to individuals and some were sold to defendant Sea View Estates, Inc. Defendant Rose is an officer and 10% stockholder in Sea View Estates, Inc., but that corporation is not otherwise connected with the Rose Interests. Section 4 was sold by the Rose Interests to defendant Cameo-at-Harbour Green, Inc, Defendant Jamsu Realty Corp. is a subsidiary of Cameo and defendants Rosenberg and Gerla are officers of those and other Cameo subsidiary corporations. For convenience, Cameo, Jamsu, Rosenberg and Gerla and any other subsidiary corpora *103 tion of theirs are hereafter referred to as Cameo Interests. Both Cameo Intersts and Sea View Estates, Inc., are in default.
Plaintiffs are the grantees of seven homes in section 2, five of which were purchased from Bose Interests and two from Sea View Estates. Defendant Green Harbour Beach Club, Inc. (hereafter referred to as “ Beach Club ”) purchased from Cameo Interests a beachfront tract in section 4 and defendant General Facilities, Inc., acquired from Bose Interests the lot immediately east of the Beach Club tract, which, however, is in section 2. Both propose to use their land for private beach club purposes. At all times material to this action, the entire 133-acre tract has been zoned Besidence “ C ”. In such a district, a private club is a permitted use when authorized by the Town Board as a special exception, after a hearing. The Town Board has granted a special exception with respect to the Beach Club property; none has yet been requested for the General Facilities lot.
Plaintiffs, contending that, by oral statements, newspaper advertising, a display (hereafter referred to as the ‘ ‘ Chandler View ”) shown in the sales office, and brochures used in making sales, it was represented to them that land in the entire development would be used only for one-family residences and that the community beach shown in the brochure and on the Chandler View and referred to in the advertising would be the only beach in the entire development, by this action seek (1) to reform their purchase contracts and deeds to insert a restriction of the entire 133-acre tract to one-family residential use, (2) to enjoin use by Beach Club and General Facilities of their land for a beach club or for other than one-family residential purposes and to cause any beach facility erected thereon to be removed, and (3) a declaration that the entire 133-acre tract is, except for the community beach and boating facility constructed by Bose Interests as part of the development, subject to an equitable restriction limiting use to one-family residences.
This action is by the plaintiffs individually. It is not brought in a representative capacity, as was the complaint in Weil v. Atlantic Beach Holding Corp. (131 N. Y. S. 2d 225, 231, mod. 285 App. Div. 1080, mod. 1 N Y 2d 20) nor has the association of which plaintiffs are members been joined, as was the case in Civic Assn. at Roslyn Country Club v. Levitt & Sons (7 N Y 2d 894) and Woodmere Parle Assn. v. Cedarpoint Realty Co. (279 App. Div. 672). Plaintiffs have elected to proceed individually and not to join either certain other builders who hold portions of the tract or the more than 100 other individual *104 home purchasers. Since the rights of those builders and individual purchasers would be affected by any declaratory judgment and they have not been joined, the court will, in the exercise of discretion, deny the prayer for a declaratory judgment affecting the entire tract. (Bach v. Grabfelder, 233 App. Div. 773; see Brechner v. Incorporated Village of Lake Success, 23 Misc 2d 159.) As to the requests for reformation, for an injunction and for other relief, defendants contend that the Statute of Frauds (Real Property Law, §§ 242, 259) proscribes the creation by oral representation of restrictions on the use of land, and that a merger clause in plaintiffs’ contracts and the parol evidence rule prevent the introduction of extrinsic evidence to establish the claimed equitable restriction.
The Statue of Frauds was not pleaded, however, and was, therefore, waived. (Matthews v. Matthews, 154 N. Y. 288.) Further the complaint seeks reformation of the contracts and the deeds and ‘ ‘ it is settled that neither the Statute of Frauds nor the parol evidence prohibition forbids reformation of a written contract to include material orally agreed upon but, because of mutual mistake or unilateral mistake plus fraud, not inserted in the writing.” (Brandwein v. Provident Mut. Life Ins. Co., 3 N Y 2d 491, 496; Susquehanna S. S. Co. v. Andersen & Co., 239 N. Y. 285; Meyer v. Lathrop, 73 N. Y. 315; Sadock v. Mitrani, 248 App. Div. 470; Schall v. Schwartz & Co., 177 App. Div. 765.) Moreover, application of the parol evidence rule depends upon the type of the transaction, the scope of the written contract and the content of the oral agreement asserted, the determining factor being whether in view of the surrounding circumstances, ‘ ‘‘ the agreement was one which the parties would ordinarily be expected to embody in the writing. ’ ” (Fogelson v. Rackfay Constr. Co., 300 N. Y. 334, 338; Ball v. Grady, 267 N. Y. 470, 472.) In the light of cases such as Phillips v. West Rochaway Land Co. (226 N. Y. 507 — enforcing an oral representation that land in front of plaintiff’s lots would be used only for a boardwalk); Hofmann v. Hofmann (172 Misc. 378, affd. 259 App. Div. 820, mod. 283 N. Y. 730 — enforcing parol representations that all of seller’s land would be used exclusively for private residences), and Lemkin v. Gulde (16 Misc 2d 1003, affd. 8 A D 2d 944 — denying summary judgment to defendant where plaintiff-tenant sought to enforce an oral representation that the remainder of the parcel on which defendant-landlord’s building was located would be maintained as a private park for 10 years), and after consideration of the written contracts (other than that of plaintiff Lomen, which was not introduced) and of the claimed rep- *105 reservations, the court concludes that, with the possible exception of plaintiff De Beer, the parol evidence rule is no bar. While it is true that each of the contracts included “ an easement for ingress and egress over the streets shown on the aforesaid map to the nearest public highway” (par. 3) and each except plaintiff Blanke’s contract included Eider Paragraph 3 stating that “ Seller represents that the Purchaser will have the use of a Public Beach and Boat Basin with Docking Privileges to be constructed by the Seller on the premises on the Harbour Estates for the use and benefits of the purchasers of Harbour Green Estates ” (in the Merzbacher contract the word “ exclusive ” was inserted in ink before the words “ use and benefits ” and in the Bebar contract an additional provision [par. 7] was inserted requiring an escrow deposit on the closing to assure completion of the beach and boat basin) it is also true that these were printed or mimeographed clauses covering items affirmatively offered by the seller. Neither clause (as in the form contracts or as amended in the Merzbacher and Bebar contracts) constitutes the basis for an expectation that the claimed parol restriction to one-family residences would be embodied in the contract. There may be basis for applying the parol evidence rule in the case of plaintiff De Beer, who purchased a waterfront plot, because he required embodiment in his contract of a representation (Eider, Par. 10) “that the beach is not affected by any of the covenants and restrictions of record,” but it is not necessary to so decide for plaintiffs, in their brief, concede that no oral representation, which would be the only extrinsic evidence unique to his case, was made to De Beer.
Is extrinsic evidence barred in the other cases by the merger clause set forth in each of the contracts Í That clause (par. 22) provides: “It is expressly understood and agreed that this contract states the entire agreement and the seller is not and shall not be bound by any stipulations, representations, agreements or promises, oral or otherwise, not printed or inserted in this contract.” The Court of Appeals has clearly distinguished between a clause specifically disclaiming oral representations concerning the very matter covered by the extrinsic testimony offered and a general merger clause (Danann Realty Corp. v. Harris, 5 N Y 2d 317), and has held a clause substantially similar to the above to be a general merger clause not barring receipt of extrinsic evidence. (Crowell-Collier Pub. Co. v. Josefowitz, 5 N Y 2d 998.) Though neither of those cases concerned easements by oral representation, the Lemkin case (supra) was concerned with the effect of a merger clause on *106 such an easement in a landlord-tenant situation and Smith v. Community Synagogue (309 N. Y. 733) with a merger clause and a development restriction to single-family residences. In both, extrinsic evidence was held admissible, affirmance by the Court of Appeals in the Smith case being over Presiding Justice Nolau’s dissent that “ evidence of oral representations to plaintiffs was incompetent ” (284 App. Div. 967, 968). Woodmere Park Assn. v. Cedarpoint Realty Co. (supra) did hold that contract provisions which can only be characterized as general merger clauses (see Record on Appeal, fols. 201, 221) made testimony of oral representations incompetent, but that decision may be considered no longer binding in view of the later Lemlein and Smith decisions by the same court and of the affirmance by the Court of Appeals in the Smith case. The court concludes, that neither the parol evidence rule nor the merger clause of the contract renders incompetent extrinsic evidence concerning the claimed restriction and, therefore, denies the motion to strike such testimony.
Motions were also made to strike the testimony of witnesses Fromme, Zelig, Lomen, Blanke and Rosenblatt as not binding on Rose Interests or defendant Beach Club. Lomen and Blanke are plaintiffs but purchased from Sea View; Fromme, Zelig, and Rosenblatt all purchased from Cameo Interests and none are plaintiffs. The testimony was admissible on the question of notice on the part of Sea View and Cameo Interests, as grantees of Rose Interests, of the claimed general plan. And while it is true that declarations by agents of such grantees would not, by themselves, be competent to show that their grantor had established a general plan, when the general plan is shown by other evidence, acts and declarations of the grantees in furtherance of the general plan become admissible, it appears, against both the grantor and the grantees. (Miller v. Barber, 66 N. Y. 558, 567; Wigmore, Evidence [3d ed.], § 377; Richardson, Evidence [8th ed.], § 189; and, see, Altman v. Ozdoba, 237 N. Y. 218; Lowenstein v. Lombard, Ayres & Co., 164 N. Y. 324, 333.) It was sought to strike testimony of Zelig concerning conversations with one Lesser, and of Rosenblatt concerning conversations with one Malkin, on the further ground that no proof other than statements of Lesser and Malkin identified them as salesmen for Cameo Interests. In each case, however, it was shown that the conversation took place in the sales office or model house maintained by Cameo, was the beginning of negotiations which included later conversations with Rosenberg, a Cameo officer, and culminated in the sale and transfer by Cameo of a home in the development to the *107 witness. Those additional circumstances made the testimony admissible gainst Cameo (Mullin v. Quinlan & Co., 195 N. Y. 109; Leo Newman’s Theatre Ticket Office v. Pittsburgh Steel Co., 115 N. Y. S. 2d 908), and to the extent above indicated against Rose Interests and Beach Club as well. Those motions are, therefore, also denied.
We come then to consideration of the merits of the ease. In Bristol v. Woodward (251 N. Y. 275, 289) Chief Judge Cabdozo discussed, but declined to draw “the ultimate generalization ’ ’ with respect to, the conflicting theories on which equitable restriction cases rest. Current decisions are framed in terms of such restrictions being easements or interests in land, rather than contracts relating to enjoyment of land to be enforced by way of specific performance, but much of the latter concept is retained through the application of principles of estoppel. Whatever the underlying theory, the following principles can be adduced from the cases: (1) a general plan exists when reciprocal benefits and burdens are established as “local law for the lands of a community,” when buyers ‘ ‘ have been invited ‘ to come in and purchase on the footing that the whole of the property offered for sale was to be bound by one general law ’ ” (Bristol v. Woodward, supra, pp. 283, 285; see, also, Booth v. Knipe, 225 N. Y. 390; Landsberg v. Rosenwasser, 124 App. Div. 559; McDougall v. Schneider, 134 App. Div. 208); (2) if such a plan be shown any grantee may enforce it against the grantor or any other grantee with notice, without regard to the chronology of the conveyances (Bristol v. Woodward, supra, Korn v. Campbell, 192 N. Y. 490; Chesebro v. Moers, 233 N. Y. 75; Clark, Covenants and Interests Running with Land [2d ed.], p. 173); (3) a general plan may be created by express covenant, by implication from a filed map or by parol representations made in sales brochures, maps, advertising and oral statements on which the purchaser relied in making his purchase (Korn v. Campbell, supra, pp 495, 498; Hofmann v. Hofmann, supra; Smith v. Community Synagogue, supra; Bimson v. Bultman, 3 App. Div. 198; Turner v. Howard, 10 App. Div. 555; see Bristol v. Woodward, supra) ; (4) the principles of implication (Erit Realty Corp. v. Sea Gate Assn., 259 N. Y. 466; Weil v. Atlantic Beach Holding Corp., supra), and estoppel (Phillips v. West Rockaway Land Co., supra), or a combination of those principles (Wilkinson v. Nassau Shores, 1 Misc 2d 917, affd. 278 App. Div. 970, mod. 304 N. Y. 614) are also applied to sustain features which benefit and may, but do not necessarily, burden the grantee, whether the benefit be individual (as in Phillips, supra) or for the com *108 munity generally (as, for example, a street, park, community beach, boardwalk or country club) but such an easement may be enforced only by the persons who purchased by reference to the map from which the implication arises (Weil v. Atlantic Beach Holding Corp., supra) or by the persons to whom the estoppel runs (White v. La Due & Fitch, Inc., 303 N. Y. 122; cf. Civic Assn. at Roslyn Country Club v. Levitt & Sons, supra); (5) the evidence to prove a general plan must be “ definite and persuasive ” (Bristol v. Woodward, supra, p. 286), to prove an easement by implication or representation, clear and positive (Wells & Riv. Corp. v. Otis Elevator Co., 7 Misc 2d 671, affd. 5 A D 2d 883; Warren v. Protano, Inc., 155 N. Y. S. 2d 686; Nash v. Moller, 141 N. Y. S. 2d 43; Palermo v. Minnamon, 74 N. Y. S. 2d 495), for the law favors the free and unobstructed use of property (Premium Point Park Assn. v. Polar Bar, 306 N. Y. 507, 512) and “ all doubts and ambiguities must be resolved in favor of the natural right to the free use and enjoyment of property and against restrictions ” (Schoonmaker v. Heckscher, 171 App. Div. 148, 151, affd. 218 N. Y. 722; Besch v. Hyman, 221 App. Div. 455).
Has a general plan been shown in the instant case? The question is one of the intention of the parties as shown by the words used, when considered in connection with the surrounding circumstances. (Schoonmaker v. Heckscher, supra; Booth v. Knipe, supra; Erit Realty Corp. v. Sea Gate Assn., supra.) It is conceded that the park, boat basin and community beach were features for the benefit of the community generally, including any purchaser anywhere within the 133-acre tract. The easement which plaintiffs seek to enforce as a general plan, however, would reciprocally bind all property within the 133-acre tract to use for single-family dwellings only and prohibit any other use, including not only other beach clubs but schools, colleges, churches, libraries, hospitals and other types of private clubs permitted, either absolutely or as special exceptions, under the zoning ordinance. Plaintiffs seek to spell out this result from (1) the maps filed with the Nassau Planning Commission, (2) a statement made by the developer to the commission, (3) newspaper advertisements, (4) a brochure used by Rose Interests salesmen, (5) the Chandler View, and (6) oral representations. Defendants point to the fact that none of plaintiffs’ contracts and none of the deeds in evidence restrict the parcel granted to single-family dwelling use nor limit grantor’s use of any retained land nor require incorporation of uniform restrictions in deeds to other grantees, and to the further fact that such restrictions were provided in all of the *109 section 1 deeds, as above noted. Those facts, coupled with the inclusion in each of the plaintiffs’ deeds of “an easement for ingress and egress over the streets shown in the aforesaid map ” raise an inference that no other restriction was intended. The court concludes that that inference has not been overcome by the extrinsic evidence introduced and that no general plan has been established.
The maps filed with the Planning Commission are to be interpreted not only by what appears on them but in the light of their setting (Erit Realty Corp. v. Sea Gate Assn., supra). The maps of sections 2 and 4, to which plaintiffs’ deeds refer, divided the sections into building lots, set forth a “ Typical Plot Plan” and a cross section of a “ Typical Septic Tank,” note that the area is zoned “Residence C,” and in the case of the section 4 map, that “Prior to actual construction of any houses ” certain dikes were to be punctured. The other section maps were substantially similar. While the maps thus evidence an intention to develop the entire tract as “ a residential area,” as was orally represented to the Planning Commission, neither the maps nor the oral representation indicate an intention to restrict that residential area to more limited uses than its Residence C zoning permitted. Nor does the fact that the Planning Commission might have required wider streets had it been informed that other permitted uses would ultimately become actual, alter the result, for the commission’s approval must be considered to encompass whatever uses are permissible under applicable zoning provisions. Nothing on the maps nor in the statement to the commission indicates an intention to restrict use of the entire tract to one-family dwellings or to prohibit more than one beach club (Warren v. Protano, Inc., supra).
Though the newspaper advertisements and sales brochure contain references to a “ 1 Resort-at-Home ’ community ” (Ex. 20, 24, 30, 48, 50, 51); “ custom planning ” of both homes and community (Ex. 19); “a picturesque haven of handsome homes ” (Ex. 23); “ exclusive rights to a secluded sand beach * * * plus a private yacht basin * * * plus a private community beach club-, plus a 3 acre scenic park” (Ex. 24, capitals and italics in original); “Free access to these on-the-property facilities: a secluded, mile-long white sand beach,” a boat basin and park (Ex. 26, 27); “ this scenic estate community ” (Ex. 27); location “in nearby, residential Massapequa ” (Ex. 49); “ a Surf Club with mile-long seaside beach ” (Ex. 50, 51), none of these expressions carry the implication that all plots other than the beach, yacht basin and park are *110 to be restricted to single-family dwellings or cannot be used for private beach club purposes. The reference to 1 ‘ mile-long seaside beach ’ ’ might, since it appears to include all of the beachfront in the five sections, carry the connotation that all waterfront property was to be open to all residents of Estates of Harbour Green, a construction which none of the parties urge; it does not otherwise imply that beachfront property may not be used for private club purposes.
Credence is lent to the claim of a general plan only by the Chandler View (which was displayed in the model house and reproduced in two newspaper ads [Exs. 19, 50]) and the similar rendition printed on the front of the sales brochure, by the express oral representations testified to, by Bose’s view, stated to the Town Board, that a beach club “ was not in the character of the type of community we were creating ” and by Goldberg’s testimony at this trial that purchasers were told that “we are going to build 359 one-family houses or we hope to build 350 if we sell them”. Bose’s view and Goldberg’s testimony must be considered against Bose’s clear statement before the Town Board that he had “placed no restriction” on the property. So considered, they furnish background supporting an estoppel to deny the truth of representations made to individual grantees, but they do not evidence an intention to reciprocally restrict all property within the community so that only one-family dwellings could be built upon them.
Each of the express oral representations will be individually discussed below. If for the moment all are accepted as fact, they nonetheless relate to only 7 out of over 120 purchasers (or if nonplaintiffs are considered, 10 out of substantially more than 120 purchasers). White v. La Due & Fitch, Inc. (supra) held express restrictions in 115 deeds in a 449-lot subdivision insufficient to effect a general plan and a similar ruling was made in Davidson v. Dunham (159 App. Div. 207) with respect' to express restrictions in 208 out of 253 deeds. (See, also, Bristol v. Woodward, supra.) And while the Chandler View and the brochure rendition both show all plots in the entire tract, other than the park and the community beach club, as occupied by houses, both are obviously artist’s conceptions (the reproduction in Ex. 50 was plainly so labeled and the obvious error showing the marina completely surrounded by houses further so indicates). The visual representation thus made, whether considered separately or in conjunction with the other available evidence, does not constitute such a clear and unequivocal representation as had been heretofore held to spell out a general plan (Hofmann v. Hofmann, supra; Smith v. *111 Community Synagogue, supra; Wilkinson v. Nassau Shores, supra).
Whether an easement by representation and estoppel was made to any of plaintiffs must be separately determined with respect to each plaintiff. (White v. La Due & Fitch, Inc., supra.) The estoppel upon which an easement by representation rests was originally conceived of as preventing application of the Statute of Frauds or the parol evidence rule (Trenton Banking Co. v. Duncan, 86 N. Y. 221; Newman v. Nellis, 97 N. Y. 285; White v. Manhattan Ry. Co., 139 N. Y. 19; Norton v. Ritter, 121 App. Div. 497) but in some cases has been stated as an estoppel to deny the truth of representations made (White v. La Due & Fitch, Inc., supra; Bimson v. Bultman, supra; Turner v. Howard, supra) or an estoppel to deny the existence of an easement (Civic Assn. at Roslyn Country Club v. Levitt & Sons, supra; see Phillips v. West Rockaway Land Co., supra). It is not necessary in the instant case to ascertain the difference, if any, in these concepts or to consider whether defendants’ failure to plead the Statute of Frauds places the matter on the basis of oral contract only and obviates the necessity of showing all the elements of estoppel, for as hereinafter stated, the court finds all the elements of estoppel to exist. Any representation, whether by map (Phillips v. West Rockaway Land Co., supra), by advertising, or by oral representation (White v. La Due & Fitch, Inc., supra), made to the particular plaintiff may give rise to an estoppel to deny existence of the easement. With respect to the purchasers from Sea View Estates, the court finds that no representation of the nature claimed in the complaint was made to Lomen, orally or otherwise, but that representations were made to plaintiff Blanke that “ all the other plots in the area [would] be strictly for houses ” and that the community beach ‘ ‘ was going to be the only beach and * * # the rest of it was going to be only houses ”. As to Blanke, the testimony thus sustains an easement by representation, and Sea View having failed to answer the complaint, plaintiff Blanke is entitled to a judgment declaring any plot now owned by Sea View subject to an equitable restriction limiting its use to houses. While Cameo Interests also failed to answer the complaint, it is not necessary to consider testimony of purchasers from Cameo since none are plaintiffs in this proceeding.
The remaining plaintiffs all purchased from Bose Interests. Be Beer need not be considered because of the concession in plaintiffs’ brief that no representation on which an easement can be based was made to him. Further, Feigen’s testimony *112 concerning “ the exclusiveness of the area” does not sustain such a claim. Bebar, Rosenberger and Merzbacher all testified to oral representation sufficient to support the claimed easement. The court does not credit the testimony of Bebar who, though he was cautious enough to require that his contract provide that an escrow deposit of $1,000 be made at title closing to assure completion of the marina and community beach, and though he considered the matter of another beach to be “extremely, extremely important” and was anxious enough about it to make six separate inquiries of Rose, Breaker and Goldberg notwithstanding that to each, according to his testimony, he got affirmative responses representing that there would be no other beaches and that there would be only homes along the shore line, nevertheless was satisfied simply to mention the question to his attorney “in an informal way” and failed to insist that the representations be included in either his contract or his deed. But Rosenberger testified that Breaker represented that “ there wouldn’t be anything on there except the beach area and the boat marina and the park, the rest of it would be all private houses ” and that Rose told him “ the entire area was to consist of homes with the exception of the three items I have mentioned ” and Merzbacher was told that the Chandler View showed ‘ ‘ how the development is going to look. You are going to have one private beach, you are going to have a boat basin, you are going to have a park, and there will be houses all along the beachfront, just as it is ” and further testified that “ Mr. Breaker did not state negatively that there will be no other beaches but he stated positively that there will be houses and that it will be a pure residential area ”. Rosenberger did not testify at the town hearings on defendant Beach Club’s application for special exception, and while Merzbacher did, no inconsistency in his testimony was shown. Merzbacher’s testimony was consistent with the earlier written statement (introduced by defendants) which he made to his attorneys, and more important, the oral representations to which Rosenberger and Merzbacher testified, while they go beyond the express testimony of Rose and Goldberg, are what a salesman might be expected to say under the circumstances. The court, therefore, credits the testimony of Rosenberger and Merzbacher and since it further finds that the testimony supports the conclusion that neither would have bought had the oral representations not been made to him, will grant both judgment declaring any plot now owned by the parties designated herein as Rose Interests to be subject to an equitable restriction limiting its use to houses.
*113 While Blanke, Rosenberger and Merzbacher are thus individually entitled to judgment, none is entitled to relief against other than his own grantor unless it be shown that such other had notice, actual or constructive, of the easement or equity created by the representation. (Tallmadge v. East Riv Bank, 26 N. Y. 105; Lewis v. Gollner, 129 N. Y. 227; Buffalo Academy of Sacred Heart v. Boehm Bros., 267 N. Y. 242; Smith v. Community Synagogue, supra; Bimson v. Bultman, supra; Moller v. Presbyterian Hosp., 65 App. Div. 134; Holt v. Fleischman, 75 App. Div. 593; Diamond v. New York, Westchester & Boston Ry. Co., 170 App. Div. 736.) The plaintiffs’ evidence was directed toward notice of the claimed general plan, no other showing was attempted. Whether considered on the question of notice of a general plan or of an easement by representation the evidence was, however, insufficient to show notice to either General Facilities or Beach Club.
As to General Facilities, a letter of one of its affiliated corporations was offered to show notice. In that letter the corporation offered to a purchaser of one of its houses beach and bathing rights on the General Facilities lot in section 2. The letter stated “ You are welcome to use these premises, but we are not representing any facts concerning its use.” That statement could refer to a restriction against beach use, but it could also refer to the possible violation of zoning regulations involved in any such use prior to the granting of a special exception by the Town Board, and it could simply be an effort to protect against tort liability. It is insufficient to spell out notice of any plan of development or any other restriction.
As to Beach Club, plaintiffs refer to the fact that Beach Club’s present president, Powers (then chairman of the predecessor Civic Association’s Beach Committee), walked over the ground and was familiar with it and to statements in articles written by Powers in the association’s newsletter, “ The Harbor Green,” indicating apprehension concerning opposition by residents of Estates of Harbour Green. But much of the waterfront, and also of the interior, property was vacant. Though notice of facts sufficient to require inquiry may be predicated on a uniform building line of erected houses, no notice may be inferred from the physical appearance of vacant land. And such apprehension as is indicated in the articles is equally referrable to the zoning matter before the Town Board and, therefore, does not show notice. Plaintiffs also claim that Powers was familiar with maps of the area and had been informed early in 1958 by Dodenhoff, president of the Harbour Green Shore Club (the entity holding the community beach), *114 that Beach Club’s purchase of its present property would be “ against the concept of how we bought our homes * * * our property was to be individual homes throughout * * * nothing but one-family homes.” Powers denied the specific conversation, however, and the court credits Powers’ testimony rather than that of Dodenhoff. Finally, nothing on the maps or on the survey under which Beach Club purchased (Ex. 87) indicated a restriction to dwellings.
While plaintiffs Blanke, Rosenberger and Merzbacher are, therefore, entitled to judgment as above outlined, they have failed to make out a case for reformation of their contracts or deeds (Hofmann v. Hofmann, supra; Ross v. Food Specialties, 6 N Y 2d 336). The complaint is, therefore, dismissed as to all plaintiffs other than Blanke, Merzbacher and Rosenberger and as to them is dismissed except to the extent of granting declaratory judgments against Sea View and the parties designated as Rose Interests as hereinabove indicated. Costs are awarded to Blanke against Sea View, to Merzbacher and Rosenberger (one bill) against the Rose Interests defendants, and Beach Club and General Facilities are each allowed one bill of costs against all plaintiffs. The action was discontinued as to defendant Goldberg at the inception of the trial, and as to defendant Taraborelli during trial and the judgment to be settled hereon should so recite. An order of discontinuance as to Taraborelli allowing him $250 plus costs has been signed.
The above constitutes the decision of the court pursuant to section 440 of the Civil Practice Act, and all motions on which decision was reserved are decided accordingly. Settle judgment on notice.