FRANK C. KLEIN, appellant,

*v.*

SISTERS OF CHARITY OF SAINT ELIZABETH, respondent.

[Decided October 17th, 1927.]

On appeal from a decree of the court of chancery advised
by Vice-Chancellor Fielder, who filed the following opinion:

"William S. L. Jewett owned a tract of land in Jersey City
fronting on the southerly side of Kensington (formerly
Linden) avenue, running easterly from West Side avenue
approximately two thousand feet to Bergen avenue, and his
father, William Jewett, owned a tract of similar frontage on
the opposite side of the same street. In March, 1864, they
caused a map to be made of their lands and filed the same
in the Hudson county register's office. This map shows the
William S. L. Jewett tract laid out into thirty-one lots of
fifty feet front, numbered from 2 to 32, inclusive, and the
William Jewett tract, laid out into thirteen lots of one hun-
dred feet front. The corners at Bergen and Kensington
avenues of each tract were not divided into lots, but were
shown on the map as large plots, all of different frontages.
By deed dated June 6th, 1864, William S. L. Jewett con-
veyed to one Wood the unplotted southwesterly corner of
Bergen and Kensington avenues and lots 2 to 7, inclusive,
adjoining the same, and on the same day William S. L.

Jewett, William Jewett and Wood entered into a written agreement, duly recorded in the register's office, whereby the parties agreed that they would not erect upon any of the lots owned by them, fronting on Kensington avenue, any slaughter house or other nuisance, and that when they, or their heirs, should convey any portion of said lands, the same restrictive covenant should be taken from their grantee.

"William S. L. Jewett then proceeded to make conveyance of the remainder of his tract by reference to his map, as follows, his last deed being dated in 1868:

"Lots 13, 14, 15 and 16, with the restrictive covenant against nuisances and the further covenant that the grantee, her heirs or assigns, will not build upon the premises conveyed more than one house for each fifty feet of front thereof, nor any house to cost less than $2,000.

"Lots 25 and 26, with the same restrictive covenants applying to the lots last above.

"Lots 17 and 18 (being part of the land involved in this suit) with no covenants.

"Lots 8, 9, 10, 11 and 12, with restrictive covenants that the grantee, her heirs or assigns, will not erect on said premises any house to cost less than $3,000, and that within fifteen years from the date of the deed no more than one dwelling house will be erected on any one of the lots conveyed.

"Lots 20, 21, 22, 23 and 24, with restrictive covenants the same as those covering lots 13 to 16, inclusive.

"Lot 19 (being the balance of the lands involved in this suit) with restrictive covenants the same as those covering lots 13 to 16, inclusive, and an additional restriction against the erection of a stable, with an agreement on the part of the grantor to release the restriction against a stable after five years from the date of the deed, in case the grantee should sell the lot. The deed for this lot contains a provision which does not appear in any previous conveyance made by the grantor, namely, that for any and every violation of the covenants contained therein the grantee, his heirs or assigns, will forfeit and pay to the grantor, his heirs, executors or administrators, $1,000 as ascertained and liquidated damages.

"Lots 27, 28, 29, 30, 31 and 32 and the unplotted corner adjoining the same on the southeasterly corner of West Side and Kensington avenues, with restrictive covenants the same as those covering lots 13 to 16, inclusive, and the same provision for penalty in case of violation as contained in the deed last above.

"Thus, all the land owned by William S. L. Jewett was conveyed by him and came into the ownership of various persons by mesne conveyances through his grantees. In or about 1891 the Hudson County Boulevard, running in a northerly and southerly direction, was cut through the tract, taking the easterly part of lot 17, with other property.

"By mesne conveyances executed in or prior to 1886, title to lots 17, 18 and 19 (being all the land involved in this suit) was in Mary M. Jewett (afterward MacLean), a daughter of William S. L. Jewett, which deeds contained no restrictions, and in 1887 she conveyed an interest in the three lots to her sisters Elizabeth Jewett (afterward Brown) and Edith Jewett (afterward Marvin) by deeds containing no restrictions. In 1893 these three owners rearranged their interests by mutual conveyances to each other, and the easterly one-half of lot 19, twenty-five feet wide by one hundred feet deep, was conveyed to Edith J. Marvin; the westerly one-half of lot 19, twenty-five feet wide by one hundred feet deep, was conveyed to Elizabeth Jewett and the westerly one-half of lot 18, twenty-five feet wide by one hundred feet deep, was convyed to Mary M. MacLean. Lots 17, 18 and 19 are shown on the Jewett map as being approximately one hundred and thirty-five feet in depth. After the mutual conveyances between the sisters, title to the rear thirty-five feet in depth of lots 18 and 19, the easterly one-half of lot 18 and the portion of lot 17 remaining after the opening of the Hudson County Boulevard remained in the three sisters as tenants in common until 1895, when Edith J. Marvin conveyed her undivided interest in the lands held in common to Peter B. MacLean (husband of Mary M. MacLean). No restrictions of any kind appear in the deeds for lots 17, 18 and 19 from the time Mary M. MacLean had title in 1886 down to the deeds next hereinafter mentioned.

"By deed dated June 16th, 1903, Elizabeth Jewett, Mary M. MacLean and Peter B. MacLean, then owning so much as remained of lot 17, the easterly one-half of lot 18 and the rear thirty-five feet in depth of lots 18 and 19, as tenants in common, and the said Elizabeth Jewett owning in severalty the said westerly one-half of lot 18, conveyed said lands to John Nevin and wife, with restrictions that the grantees, their heirs and assigns, should not erect any building nearer the building line of Kensington avenue than twelve feet, including stoops and steps; that no dwelling house thereon should cost less than $2,000; that no stable should be erected within one hundred feet of Kensington avenue and that no slaughter house or other nuisance should be permitted. John Nevin and wife conveyed the same premises to defendant by deed dated November 19th, 1912, containing the same covenant as to restrictions on the part of defendant, its successors and assigns.

"By deed dated February 16th, 1906, Elizabeth J. Brown conveyed to Charles H. Smith the westerly one-half of lot 19, twenty-five feet wide by one hundred feet in depth, said deed containing a covenant on the part of the grantee that he, his heirs or assigns, would not erect on the premises conveyed any structure other than a dwelling house; or any dwelling house near the building line of Kensington avenue than twenty-five feet; or more than one dwelling house upon the premises conveyed and upon the premises adjoining easterly contiguous thereto, conveyed to grantee by Edith J. Marvin by deed of even date; or any dwelling house to cost less than $2,000; or any slaughter house or other nuisance. By deed of even date, Edith J. Marvin conveyed to Charles H. Smith the easterly one-half of lot 19, twenty-five feet wide by one hundred feet in depth, which deed contained an identical restrictive covenant as the deed from Elizabeth J. Brown to said Smith. By deed dated November 4th, 1916, Charles H. Smith conveyed to complainant the whole front of lot 19, being a lot fifty feet wide by one hundred feet in depth, which deed contained the same restrictive covenants as in the deeds to Smith.

"On its lands, defendant has commenced the erection of a school building which extends out to the line of Kensington avenue and will cover practically the entire area of its lands. Complainant contends that this structure will be in violation of restrictions imposed on defendant's lands, and that it will shut off the light, air and view from complainant's dwelling house, which is erected on his lands in strict compliance with the restrictions applying thereto, and he seeks to enjoin defendant from proceeding with the erection of its school building.

"Complainant's first point is that defendant has no right to erect any structure on so much of its lands as forms part of lot 19 as shown on the Jewett map. This claim is based solely upon the restriction contained in the deed dated November 12th, 1868, by which William S. L. Jewett conveyed the whole of lot 19, with the restriction, among others, that the grantee, his heirs and assigns, should not build more than one house on said lot. As I have said, lot 19 is shown on the Jewett map as fifty feet wide throughout by one hundred and thirty-five feet deep. Defendant owns the rear thereof, being a plot fifty feet wide by thirty-five feet deep, and complainant owns the front, fifty feet wide by one hundred feet deep.

"Upon complainant's portion of the lot is a dwelling house erected fifteen years ago. Complainant claims that William S. L. Jewett had a general scheme for the improvement of so much of his land as remained after his conveyance to Wood, by restricting the use of each fifty-foot lot to the erection of a single building thereon, and counsel for complainant points to the fact that in each deed, after his conveyance to Wood, he inserted such restriction, except in his conveyance of lots 17 and 18, which latter lots he conveyed to his wife through an intermediary, without restrictions of any kind.

"William S. L. Jewett had filed his map showing all his property from West Side avenue to Bergen avenue (except the corners), laid out in fifty-foot lots, prior to his conveyance to Wood, which conveyance referred to said map and contained no restrictions. When he entered into the agreement with Wood and William Jewett, the only general scheme

of restriction upon which the three owners then agreed was against the use of their properties for any purpose which might be considered a nuisance, and it was not until a year later that William S. L. Jewett made his first conveyance of lots within his remaining tract, being the conveyance of lots 13, 14, 15 and 16. If he then had a general scheme in mind, it is disclosed by the restrictions contained in that deed, which were against nuisances, against the erection of more than one dwelling on each fifty feet of front and against the erection of any house to cost less than $2,000, but he did not covenant with his grantee to insert identical restrictions in his deeds conveying the remainder of his land. He did, however, place the same restrictions in subsequent deeds for lots 20 to 26, inclusive, but when he conveyed lots 17 and 18 he imposed no restrictions, and when he conveyed lots 8 to 12, inclusive, 19, 27 to 32, inclusive, and the unplotted corner of West Side and Kensington avenues, the restrictions were different in form and effect.

"A general scheme of restrictions to be effective and enforceable must have certain characteristics. It must be universal, that is, the restrictions must apply to all lots of like character brought within the scheme. Unless it be universal it cannot be reciprocal. If it be not reciprocal, then it must as a neighborhood scheme fall, for the theory which sustains a scheme or plan of this character is that the restrictions are a benefit to all. The consideration to each lot owner for the imposition of the restriction upon his lot is that the same restrictions are imposed upon the lots of others similarly situated. If the restrictions upon all lots similarly located are not alike, or some lots are not subject to the restrictions while others are, then a burden would be carried by some owners without a corresponding benefit. The burden follows the benefit, and where there is no benefit there should be no burden. *Scull* v. *Eilenberg, 94 N. J. Eq. 759.* Hence, the restriction in question cannot be considered as having been imposed on lot 19 pursuant to a general scheme of restriction applicable to all lots of the common owner, similarly located, and the covenant is not enforceable by a subsequent grantee of adjoining or adjacent land, as part of a general building scheme.

It is rather a bare restrictive covenant reserved by a grantor in favor of his retained lands and which a subsequent grantee of the retained lands may enforce against the lands of the covenantor, if enforcement be equitable and reasonable in view of the circumstances at the time enforcement is sought. That a definite sum was named in the covenant as ascertained or liquidated damages for every .violation does not ·indicate that the grantee, or the defendant who claims under him, was given the option to violate the restriction and pay the specified damages in lieu of performance. *Rittenhouse* v. *Swiecicki, 94 N. J. Eq. 36.*

"Complainant is not a grantee of lands retained by William S. L. Jewett at the time he conveyed lot 19. Complainant is the owner of part of the very lot made subject to the restriction. While lot 19 was still vacant, it was subdivided and title to the front fifty feet wide by one hundred feet deep thereafter took a different course from title to the rear fifty feet wide by thirty-five feet deep. It so happened that the owner of the front part built first, but suppose the owner of the rear part had been the first to erect some kind of a structure within his rights. Could it be said that he thereby acquired the equitable right to prevent the owner of the front of the lot from building thereon and thus render the front of no value to its owner? I think not, and, therefore, reversing the situation, I do not think complainant entitled to equitably enforce the restriction now in question against defendant.

"If it was the plan of William S. L. Jewett to create a residential neighborhood of single family dwellings, each on a lot not less than fifty feet wide, such plan has failed. The land owned by his father, William Jewett, on the north side of Kensington avenue from the Hudson County Boulevard to West Side avenue, is wholly built on. Most of the houses on the tract are erected on less than fifty feet front; many are two-family houses and almost opposite complainant's land is a large apartment house. On the William S. L. Jewett tract are two apartment houses, one near West Side avenue and the other near Bergen avenue. It further appears that owners of lots in the William S. L. Jewett tract have disre-

garded the restrictions against building more than one house on fifty feet and have generally acquiesced in its violation by lot owners. Lots 20, 21, 22 and 23, immediately adjoining complainant's lands on the west, were conveyed subject to the restrictions, but on lot 20 and the easterly half of lot 21 stands a double house, that is, two houses under one roof with party wall between, on seventy-five feet; on the westerly half of lot 21, which is a lot twenty-five feet wide, stands a dwelling house; on lot 22 stands a double house, that is, two houses under one roof with party wall between, on fifty feet, and on lot 23, also fifty feet front, stands the same kind of a double house as on lot 22. These houses were erected over thirty years ago. The opening of the Hudson County Boulevard took a portion of lot 15 and on the remaining part of that lot, which is about twenty-five feet wide, is a dwelling house built before the boulevard was cut through. An owner of lot 26 sold ten feet of the width thereof and on the remaining forty feet in width stands a house. On one of the fifty foot lots conveyed by Jewett to Wood stand two houses. It should be noted that lots 17 and 18, immediately adjoining complainant's lands on the east, now owned by defendant, are unrestricted as to the number of buildings which may be erected thereon and that the restrictions on lots 8 to 12, inclusive, were for fifteen years, and having expired, the owner is not now restricted as to the number of buildings thereon. The neighborhood of complainant's property, therefore, is no longer a neighborhood built up with single-family dwellings each erected on a lot fifty feet or more in width, and since all lots in the William S. L. Jewett tract are not bound by the restriction, complainant would enforce against defendant's land, it would be inequitable and unreasonable to enforce such restriction in this suit. *Fisher* v. *Griffith Realty Co., 88 N. J. Eq. 204.*

"Complainant's next point is that he is entitled to enforce against defendant the restriction covering lots 17 and 18 contained in the deed from Elizabeth Jewett, Mary M. Mac-Lean and Peter B. MacLean to John Nevin and wife, and in the deed from John Nevin and wife to defendant, which, in effect, is that no building shall be erected nearer the building

line of Kensington avenue than twelve feet. He asserts that this restriction was placed in the deeds to Nevin and to the defendant for the benefit of the adjoining lot 19. The burden is on complainant to establish his assertion as a fact and to prove that defendant is chargeable with notice of such fact. The deeds in which the restriction is found contain no statement that the restriction was for the protection or benefit of adjoining or adjacent land; nor does the covenant provide that it may be enforced by an adjoining or adjacent lot owner, his heirs or assigns; nor did the grantor, for himself, or for the owners of adjoining or adjacent land, covenant that he and they would create and enforce similar restrictions against such adjoining or adjacent land. There are cases where a restrictive covenant entered into by a grantee of a lot which is part of a general development scheme will be enforced in equity at the suit of a subsequent grantee from the common owner, of another lot included in such scheme, but the lots now owned by complainant and defendant are not restricted alike, and at the time the restrictions were imposed on lots 17 and 18 the grantors did not own lot 19. Lots 17 and 18 were owned and conveyed by Elizabeth Jewett, Mary M. MacLean and Peter B. MacLean. At that time the easterly half of lot 19, lying next west of lots 17 and 18, was owned by Edith J. Marvin, and the westerly half of lot 19 was owned by Elizabeth Jewett. It cannot be inferred that the restriction was placed in the deed to Nevin for the benefit of his grantor's retained lands, because none of his grantors owned adjoining land; two owned no adjacent land and one owned a lot twenty-five feet west of the restricted land. Complainant sought to prove a parol agreement entered into between Edith J. Marvin, Elizabeth Jewett and Mary M. MacLean, that they would restrict their respective properties for their mutual benefit and that pursuant to such agreement and for the benefit of Edith J. Marvin and Elizabeth Jewett, each owning in severalty a part of lot 19, the restrictions were placed in the deed to Nevin.

"The restrictive covenant as contained in the deeds to Nevin and to defendant is in form, but the personal covenant of each

49

grantee of lots 17 and 18 with his grantor. It purports to state the whole agreement between the parties to it and it gives notice to subsequent purchasers of the extent to which the covenantors bound themselves. I am not persuaded that anything can be read into it to make it mean something more than what the parties to it stated, and, therefore, testimony as to what the owners of these several lots agreed among themselves as to restrictions is not admissible to show its meaning and effect as against a covenantor who was not a party to such parol agreement. No inference can be drawn from the covenant itself that it was intended for the benefit of adjoining lot owners, and if testimony could be admitted to show such intention as between the covenantees, Elizabeth Jewett, Mary M. MacLean and Peter B. MacLean and adjoining and adjacent lot owners, there is nothing in the case to charge defendant with notice of such agreement. I shall hold that defendant is bound only by notice of the restriction and of its intent and effect as it appears of record, and that the restriction does not impose a burden on defendant's lands for the benefit of the lands adjoining and adjacent, now owned by complainant. *Hemsley* v. *Marlborough Hotel Co., 62 N. J. Eq. 164; McNichol* v. *Townsend, 73 N. J. Eq. 276; Sailer v. Podolski, 82 N. J. Eq. 459.*

"The bill of complaint will be dismissed."

*Mr. James E. Pyle,* for the appellant.

*Mr. Mark A. Sullivan,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.