Edgewater Beach Hotel and J. Albert v. William H. Bishop, *et ux.*

163 So. 214.
Opinion Filed August 26, 1935.
Rehearing Denied September 17, 1935.

*Stapp, Gourley, Ward & Ward,* for Appellants;
*S. J. Barco* and *John L. Graham,* for Appellees.

Buford, J.—This cause is before us on appeal from decree of injunction which was sought to enforce the provisions of a restrictive covenant running with the land and on application for supersedeas of the degreè of injunction.

Inasmuch as the granting of a supersedeas would in effect vacate the order of injunction, the Court issued its order directing that the case be heard on application for supersedeas and on its merits at one and the same time. In short, the facts are: Ocean Beach Realty Company in 1914 began development of a strip of land in the Southern part of Miami Beach peninsula running along the Atlantic Ocean. The subdivision was called Ocean Beach Addition to Miami Beach and one of those additions was specifically platted and called Ocean Beach Addition No. 2 and consisted of 6 blocks numbered from 14 to 19, both inclusive. These blocks were laid out immediately West of a driveway which was then only 25 feet wide called Ocean Drive and the East front of the blocks faced the Atlantic Ocean. In these 6 blocks there were platted 49 lots facing the Atlantic Ocean and a like number of lots facing a street on the West known as Collins Avenue or Atlantic Boulevard which was a 60 foot street.

We shall deal only with those lots in the 6 blocks facing Ocean Drive. It appears that there was no general agreement or covenant applying to all of the lots in that subdivision restricting the distance from the East property line at which houses should be erected, but some of the deeds conveying lots in this subdivision contained a restrictive covenant in the following language:

"1st. That the grantee herein, his heirs and assigns, shall not erect nor permit to be erected any building on the said above described property, whose front line shall be less than twenty-five (25) feet from the front of said lot."

Of the 49 lots facing Ocean Drive there were seven conveyed by deeds which did not contain this restrictive covenant and some of those were conveyed to the officers of

the corporation which put on the development of the sub-division.

The record shows that as to 12 other of the 49 lots (the deeds conveying the same from the developers to purchasers containing the restrictive covenants) the restrictions have not been adhered to but have been violated. At the time the record was made up of the 49 lots there were 20 still vacant. In block 19 there were 10 lots facing Ocean Drive numbered from 1 to 10, inclusive. The complainant in the court below owned lot No. 7 and this lot was conveyed by deed containing the restrictive covenant. · Lot No. 3 was conveyed by deed containing restrictive covenant and it has been respected. Lots 9 and 10 were conveyed without the restrictive covenant. The defendant in the court below, appellant here, became the owner by mesne conveyance of lot 8 and lot 9. The deed by which lot 8 was originally con-veyed contained the restrictive covenant. The deed con-veying lot 9 did not.

The owner of lot No. 7 built an apartment house on that lot with the front of the main house 35 feet back from the property line and the front of a ten foot porch back 25 feet from the property line. The appellants here procured from the original vendors a release of the restrictive covenant as to lot No. 8 and began erection of a large hotel on lots 8 and 9, the restrictive covenant apparently applying to lot No. 8 and not applying to lot No. 9. The owner of lot No. 7 exhibited his bill of complaint praying for an injunction against the violation of the restrictive covenant as to lot No. 8.

From the foregoing it will be seen that there was a great lack of uniformity with reference to the insertion of the restrictive covenant clause in the conveyances of the lots in this subdivision. Lots 9 and 10 of Block 19 which were

conveyed without the restriction were at the south end of that block. Lots 4 and 5 in block 17 which were conveyed without restrictions were in the middle of that block. Lots 1 and 2 in block 15 which were conveyed without restriction were in the north end of that block and lot 4 in block 14 which was conveyed without restriction was near the middle of that block.

The record shows that when this subdivision was platted there was practically no development in that vicinity at Miami Beach. One of the restrictions contained in the deeds was: "That the said grantee, his heirs and assigns, shall not erect nor permit to be erected, any building on any lot fronting Ocean Drive at a cost of less than fifteen hundred ($1500) Dollars," which tends to show that the property was not considered of great value at that time. Ocean Drive is now a 40-foot paved street. It does not appear that there was any mutuality or reciprocal relationships between the grantor and the various lot purchasers. There were no conditions contained in any of the deeds containing the restrictive covenant clause that like conditions would be written in the other deeds. The restrictions contained in these deeds were written at a time when the City of Miami Beach was a small village of between 500 and 1000 people. The population of that little city now is something like 20,000 people. Those lots, which were evidently designed to accommodate the most modest sort of a dwelling to cost around $1500.00, are now of such value that to erect such a dwelling on them would be to indulge in utter foolishness.

The record shows that this property is in demand for expensive apartment houses and hotels. The conditions have entirely changed since the plat was made and the lots sold by the developers of that subdivision.

The record further shows that since 1925 and 1926, when Ocean Drive was widened, little, if any, attention has been paid to the restrictions contained in the deeds. Buildings have been erected indiscriminately without regard to the 25 feet limitation. Some abut on the sidewalk; some are set back four or five feet, some 10 or 15 feet, a few 25 feet and others even at a greater distance.

In the case of Barton v. Moline Properties, which is now before us on rehearing, Mr. Justice Davis expressed the views of the Court in regard to the effect which change in conditions would have upon enforcement or restrictive covenant clauses included in deeds made before modern stages of development had been reached.

The effect of such covenants has been discussed at length by us in the case of Osius v. Barton, 109 Fla. 556, 147 Sou. 862, and in Stephl v. Moore, 94 Fla. 313, 114 Sou. 455; In Heisler v. Marceau, 95 Fla. 135, 116 Sou. 447; Moore v. Stevens, 90 Fla. 879, 106 Sou. 901.

Considering the record here as a whole, we cannot say that complainant in the court below was without any right to redress, but we think that the principle expressed in Osius v. Barton, *supra.*

"But the right in equity of grantees from a common grantor, to enforce, *inter sese,* covenants entered into by each with the grantor, or running with the land as emanating from the common grantor, is ordinarily confined to cases where the scheme of restriction contemplated by the deeds is universal or reciprocal, the consideration for the *obligation* to observe the restrictions is the imposition of the same or kindred restrictions on other lots similarly situated. Eliem v. Sisters of Charity of St. Elizabeth, 101 N. J. Eq. 761; 139 Atl. Rep. 174; Forman v. Safe Deposit & Trust Co., 114 Md. 574, 80 Atl. Rep. 298; Trustees of

Columbia College v. Thacker, 87 N. Y. 311, 41 Am. Rep. 365, 18 C. J. 394-395.

"It seems to have been uniformly held that where the equitable enforcement of building restrictions would be oppressive and unreasonable because of an entire change in the circumstances and in the neighborhood of the property, and the character of the improvements and the purposes to which they are applied, equity may refuse to enforce observance of the restrictions, and leave the parties to their action at law. Moore v. Curry, 176 Mich. 456; 142 N. W. Rep. 839; Kneip v. Schroeder, 255 Ill. 621, 99 N. E. Rep. 617." is applicable here and should be followed.

We therefore, held that the decree appealed from should be reversed with directions that the cause be dismissed without prejudice to complainant in the court below to prosecute and maintain such action at law, if any he has, as he may be advised, to recover damages for the alleged breach of the restrictive covenants upon which he relies.

It is so ordered.

WHITFIELD, C. J., and TERRELL and DAVIS, J. J., concur.