**Garland C. McCREE et al., Plaintiffs,**

v.

**Albert PEARLMAN et al., Defendants.**

**Civ. A. No. 2145–58.**

United States District Court
District of Columbia,
Civil Division.

March 15, 1960.

———◆———

Theodore Kligman, Washington, D. C., for plaintiffs.

Harry L. Ryan, Jr. (of Whiteford, Hart, Carmody & Wilson), Washington, D. C., for defendants.

TAMM, District Judge.

This action was initiated in August, 1958 by a complaint which sought to enjoin the defendant Dodson, the record owner of Lot 20, Square 5076, improved by premises 4173 Minnesota Avenue, N. E., from conveying those premises to the defendant Pearlman for use as a retail liquor store. The three groups of plaintiffs are owners of dwelling houses in the subdivision known as "Hillbrook" in which the defendant Dodson's property is also located. During the pendency of this action and with knowledge of and in spite of the pending action, the defendant Dodson conveyed the premises to the defendant Pearlman who has each year since that time received from the Alcoholic Beverage Control Board of the District of Columbia a license permitting him to operate a liquor store in the premises, 4173 Minnesota Avenue, N. E. This defendant has been since that time engaged in the actual operation of a retail liquor store and has made substantial investments in the improving of the property for its use as a liquor store. By this action, as presently constituted, the plaintiffs seek to restrain the defendant Pearlman from continued operation of this liquor store.

The plaintiffs predicate this action upon a covenant appearing in a deed dated June 30, 1908 and recorded in the Office of the Recorder of Deeds for the District of Columbia on July 1, 1908. By that deed, the common grantor of the premises owned by the present plaintiffs and owned by the defendant Pearlman covenanted:

"That the said party of the second part his heirs and assigns shall not manufacture or sell spirituous or malt liquors, or allow the same to be manufactured or sold, upon the said lots and premises."

Collaterally, it may be noted that this deed contained other covenants whose applicability are raised by several of the defenses offered in the case, but in view of the Court's ruling upon the quoted covenant above, it is not deemed necessary to discuss or to pass upon the remaining covenants.

■ The covenant quoted above in the deed of June 30, 1908 is a covenant running with the land.

The plaintiffs have offered in evidence as plaintiffs' exhibit No. 1 a certified copy of the deed referred to above. This deed conveyed some 121 lots located in six squares in a section known as "Hillbrook" subdivision, and the covenants, including the covenant quoted above, are part of this deed. The plaintiffs have also offered in evidence as plaintiffs' exhibits No. 2, 3 and 4 certified copies of other deeds necessary to establish their titles under the deed containing the covenant which is the subject of this opinion. The deed of June 30, 1908 does not transfer title to all of the lots in the six squares enumerated in the deed. The lots transferred actually form a checkerboard pattern throughout the six blocks. A study of a plat portraying the entire area discloses that in each of the squares enumerated there are a substantial number of lots which are not included in the deed. As a typical example, the first lot referred to in the deed of June 30, 1908 is Lot No. 7 in Square 5076. It is observed, then, that Lots 1, 2, 3, 4, 5, and 6 in this square are not incorporated in this deed, and there is no evidence relating to the existence or non-existence of a covenant, or covenants, covering these lots. Lot No. 7 in Square 5076 is enumerated in the deed but lots 8 and 9 are omitted, as are lots 14 and 15, lots 18 and 19, lots 24 and 25, lots 28, 29 and 30, lots 35, 36, 37, 38, 39, 40 and 41. This enumeration of omitted lots in the development is typical in greater or lesser degree of the lots excluded in the other squares involved in the parent deed. It

is thus readily seen that upon the basis of the evidence before the Court, while enumerated lots are burdened with the several covenants, intervening lots in the same squares, on the same streets and in the same blocks are not burdened with the restrictive covenants.

This factual situation immediately raises the question of whether the fact that the covenants do not embrace all of the lots in the area makes the covenants unenforceable. The impact and effect of covenants running with the land have, of course, been the subject of voluminous opinions, and there is readily ascertainable conflict in the rules in several of the state courts. One of the most frequently cited cases upon the subject generally is that of Korn v. Campbell, 192 N.Y. 490, 85 N.E. 687, 689, 37 L.R.A.,N.S., 1. In this case, the Court divided restrictive covenants into three classes, stating:

"For the particular purposes of this case such covenants may be broadly divided into three classes. In the first class may be placed those which are entered into with the design to carry out a general scheme for the improvement or development of real property. This class embraces all the various plans, generally denominated in the English cases as 'building schemes,' under which an owner of a large plot or tract of land divides it into building lots, to be sold to different purchasers for separate occupancy, by deeds which contain uniform covenants restricting the use which the several grantees may make of their premises. In such cases the covenant is enforceable by any grantee as against any other, upon the theory that there is mutuality of covenant and consideration, which binds each and gives to each the appropriate remedy."

The covenants contained in the deed of June 30, 1908, in addition to the prohibition of the sale or manufacture of liquor, prohibited the sale or resale of the property to persons of Negro blood and prohibited the construction of any building costing less than the sum of $1,000. It is obvious that the purpose of this covenant was, in the phraseology of the Korn case, to carry out a "building scheme."

One of the more interesting cases upon this question is O'Malley v. Central Methodist Church, 67 Ariz. 245, 194 P.2d 444, 451, in which case there is cited with approval the following quotation from Moe v. Gier, 116 Cal.App. 403, 2 P.2d 852:

"* * * To create an equitable servitude in the grant of lands in a large area, it is essential that there must be a general scheme of restrictions sufficiently uniform in character to indicate unmistakably a designated and adopted plan throughout *common to all purchasers of lots.* The restrictions must not only appear in one deed, but in all deeds * * *. In other words, the restrictions must be for the mutual benefit of all parcel owners and each lot imposed with a servitude for the benefit of each and every other lot." (Emphasis supplied).

Thereafter, citing the case of Scull v. Eilenberg, 94 N.J.Eq. 759, 121 A. 788, the Court in the O'Malley case continued:

"A neighborhood scheme of restrictions to be effective and enforceable must have certain characteristics. *It must be universal;* that is, the restrictions must apply to all lots of like character brought within the scheme. Unless it be universal it cannot be reciprocal. If it be not reciprocal, then it must as a neighborhood scheme fall, for the theory which sustains a scheme or plan of this character is that the restrictions are a benefit to all. The consideration to each lot owner for the imposition of the restriction upon his lot is that the same restrictions are imposed upon the other lots similarly situated. If the restrictions upon all lots similarly located are not alike, or some lots *are not subject to the restrictions while others are,* then a burden would be carried by some owners without a cor-

responding benefit. 'The burden follows the benefit,' * * *. When there is no benefit there should be no burden. If the benefit be destroyed the burden should end." (Emphasis supplied).

The Court is of the opinion that the plaintiffs cannot enforce the covenant in the deed of June 30, 1908 relating to the sale of liquor against the defendant Pearlman for the reasons enumerated in the opinions quoted above. The evidence before the Court establishes, as previously stated, a checkerboard realty pattern in which certain lots are burdened with covenants which are not applicable to adjoining lots. Thus, in certain of the squares, the covenants apply only to what is almost alternating lots. The covenant, then, lacks universality and is not reciprocal. It would, consequently be unfair to burden the excluded lots with the consequences of the burdens of the included lots, and the Court, accordingly, finds for the defendant.

Counsel will submit appropriate order.